## Appeal of Charles D. Freeman et al.

---

### Maria Young's Estate.

**A lunatic cannot make a valid contract, even for counsel and expert witnesses in proceedings *de lunatico inquirendo.***

**Their compensation is, however, to be allowed as part of the costs upon application at the proper time to the court of common pleas having jurisdiction of the inquisition.**

**After the death of the lunatic their claims, not having been presented to the common pleas, cannot be allowed by the orphans' court as debts of the lunatic.**

**Nor can they be so allowed by the orphans' court pending an appeal from an order of the common pleas allowing them as costs of the proceedings.**

(Argued March 20, 1888. Decided April 23, 1888.)

July Term, 1887, No. 152, E. D. All the Judges present. Appeal from a decree of the Orphans' Court of Philadelphia County distributing the personal estate of an intestate, October Term, 1884, No. 24. Affirmed.

Cited in Ebling's Estate, 134 Pa. 227, 236, 19 Atl. 847, Affirming 9 Pa. Co. Ct. 138, 27 W. N. C. 54, and in Burns's Case, 6 Pa. Co. Ct. 159. See also, as to the effect of the death of the lunatic, Gensemer's Estate, 170 Pa. 96, 32 Atl. 561; Mitchell v. Spaulding, 20 Pa. Super. Ct. 299.

At the audit of the final account of the administrator of Maria Young, deceased, before HANNA, P. J., claims were presented as follows:

By Charles D. Freeman, Esq., to recover the sum of $1,000 for professional services and advice rendered to decedent at her request and employment as counsel for her in proceedings against her *de lunatico inquirendo* in the court of common pleas of this county. By Mr. Freeman on behalf of others to recover for their attendance as witnesses, on the part of decedent, the alleged lunatic, before the commissioner and inquest. By Mrs. Mary J. Murphy to recover the sum of $115 for services rendered decedent, and table board furnished her from November 7, 1879, to January 30, 1880.

All these claims were objected to by the heirs.

Upon disposing of these claims the auditing judge said:

From the evidence it appeared that decedent on the 30th day of January, 1880, was duly found, by inquisition, a lunatic, and had been such for a period of sixteen months; on February 2, 1880, the inquisition was filed in the court of common pleas, and on February 7, 1880, the present accountant was appointed committee of her person and estate.

The proceedings were commenced on October 1, 1879, upon petition of certain of her next of kin. The first meeting was held before the inquest on October 16, 1879, and continued until January 30, 1880. At the various intervening meetings the decedent was represented both by Mr. Burton and Mr. Freeman as her counsel, the latter having been especially employed by her, and the former having been her counsel in the settlement of her deceased husband's estate, she being executrix of his will. A large number of persons appeared as witnesses for the decedent —some of whom were physicians, and produced and examined as experts.

After the filing of the inquest, Mr. Freeman filed a traverse, but took no further steps therein, and it remained undisposed of at the death of the decedent. The committee took charge of the estate of the lunatic, and the court of common pleas, by order made, directed payment of the costs of the inquisition. These were paid by the committee. But no claim was presented by Mr. Freeman for payment of his professional services to the lunatic, or for compensation of the witnesses who attended in

her defense.   On December 4, 1883, the decedent died.   The committee then filed an account in the court of common pleas, and upon the settlement thereof no claim was made by Mr. Freeman, or by any of the witnesses, to recover compensation still due them.   Having administered upon the estate, the balance in the custody of accountant as committee was awarded to the accountant as administrator, and is now for distribution.   The claim presented for professional services and attendance of witnesses, if they are to be considered as part of the costs in proceedings in lunacy, should have been made to the court of common pleas.

By the act of April 16, 1849, Purdon's Digest, 981, pl. 13, it is the duty of that court to direct payment of all costs attendant thereon and apportion them if necessary as the justice of the case may require.   Hassenplug's Appeal, 106 Pa. 527.

That court has full jurisdiction, and no other, and if parties claiming compensation for services rendered in the proceeding neglect their opportunity, they must suffer the result of their oversight.   In Wier v. Myers, 34 Pa. 377, an action was brought in the common pleas in assumpsit against the committee by the attorney for the petitioner in the lunacy proceedings to recover for his professional services in conducting the matter ; but the court held (reversing the court below) that it was improper that the committee could not be sued in law, but the proper forum was the court sitting to revise and settle the proceedings in lunacy and distribution of the estate of the lunatic—in other words, by a decree for the payment of the costs of the inquest.   The court then would act as justice required ; and if the lunatic had the benefit of counsel to defend and protect his or her rights, there is every reason to suppose an allowance would be made to compensate counsel and witnesses out of the lunatic's estate in the hands of the committee.

Such an allowance might have been made up to the moment of final distribution of the funds in the custody of the committee. But it appears that no such application was made.   This court cannot now apply the moneys in the hands of the administrators of the deceased lunatic towards payment of any of the costs of the inquest.

The present fund is only applicable to the payment of her debts, and, she being a lunatic at the time of her·death, only those for which she could be held liable in her lifetime.

The claims now made against the estate, as they cannot be

treated as costs, can only be considered as debts founded either upon an express or implied contract. The decedent having been found a lunatic without lucid intervals, for a period of sixteen months prior to January 30, 1880, the services performed by counsel during that period, the attendance of witnesses at the inquest, and the services rendered by the claimant for board furnished, etc., were all performed for and rendered to a lunatic. The question is thus suggested, Is a lunatic liable upon either an express or implied contract?

The question suggests its answer, which is that such a contract cannot be enforced. It is a hardship, no doubt, for the reason that Mr. Freeman certainly earned and merits compensation, and the witnesses attended in behalf of the lunatic; but public policy to protect a lunatic from extravagance and improvidence renders void or voidable his contracts. If the traverse here had been successfully prosecuted, then as the decedent would be declared sane she would be liable on her contracts. *Re* Johnston, 8 W. N. C. 439. But it was not, and we are bound by the finding of the inquest.

One in the custody of the law as a lunatic can make no express contract, and the law will imply none. Hehn v. Hehn, 23 Pa. 415. And as to an habitual drunkard, see Imhoff v. Witmer, 31 Pa. 243.

A grantor may avoid his deed by proof that he was *non compos mentis* at the time of its execution. Bensell v. Chancellor, 5 Whart. 371, 34 Am. Dec. 561; Crawford v. Scovell, 94 Pa. 48, 39 Am. Rep. 766; Mills v. Slook, 9 W. N. C. 379.

The record is prima facie evidence to impeach the acts of the lunatic within the period named in the inquisition. Willis v. Willis, 12 Pa. 159; Rogers v. Walker, 6 Pa. 371, 47 Am. Dec. 470.

And if one, pending proceedings against him as an habitual drunkard, gives his counsel a judgment note as a retainer, the judgment will be opened at the instance of the committee subsequently appointed.. Sidebotham v. Young, 4 W. N. C. 442.

In view of the authorities and well-settled law upon the subject the auditing judge is obliged to hold that the contract of the decedent for the employment of counsel cannot be enforced; nor can the persons who attended as witnesses for her recover against her or her estate, upon any implied contract to pay them for their services.

The claim of Mrs. Mary J. Murphy, however, rests upon a different basis. This is to recover for necessaries furnished the 'decedent during three months prior to the finding of the inquest. For such necessaries the estate of the lunatic is liable. La Rue v. Gilkyson, 4 Pa. 375, 45 Am. Dec. 700.

The auditing judge allowed the claim of Mrs. Murphy, after reducing it to $36, and reported distribution accordingly.

Exceptions were filed by Chas. D. Freeman and others.

Upon dismissing the exceptions ASHMAN, J., delivered the following opinion:

No such error as would impeach the verdict of a jury has been shown in the finding of the auditing judge, fixing the character and value of the services rendered by Mrs. Murphy to the decedent, and the exceptions to his award must therefore be dismissed. The exceptions to the disallowance of the claim for counsel fees and costs were filed March 20, 1885. On July 3, 1885, and while the exceptions were pending, the amount of those expenses was ascertained by the common pleas, and an order entered for their payment; and this court is now asked to award that sum out of the estate of the decedent. This could be done only by considering the exceptions as in the nature of a bill of review, the order of the common pleas never having been presented to the auditing judge. The decree, however, was against the committee on lunacy, after its functions had terminated by the death of the lunatic, and the moneys in his hands had been paid over to the administrators of the lunatic's estate, and the question of its validity is about to be submitted to the supreme court. We think it would be inexpedient to pass upon the claim before the decision of that question, especially as the real estate of the decedent is sufficiently valuable to secure all her indebtedness. We therefore dismiss the exceptions, without prejudice to the right of the parties to present their claim at the audit of a subsequent account.

A petition for review was afterward filed. It was dismissed with the following opinion by PENROSE, J.:

When this estate was before us, more than a year ago, upon exceptions to the adjudication, it was said that inasmuch as the decree of the common pleas, relied upon as establishing the rights

of the present petitioners, had not been entered until after the account had been adjudicated, the exceptions could only be treated as in the nature of a proceeding for review; and that so treating them, as the decree was simply against the committee in lunacy, after the estate which was the subject of the account had passed to the administrator, and the question of its efficacy as against next of kin and heirs was to be the subject of consideration by the supreme court, on appeal, as the case did not fall within the provisions of the act of 1840, it would not be a proper exercise of our discretion to open the distribution made by the auditing judge; especially as the petitioners had the right to proceed against the real estate of the decedent, or to present their claims in this court upon the filing of a subsequent account by the administrator. The position of the case has not been changed by the filing of a formal petition for review; and consistency, if nothing else, requires us to refuse the relief prayed for, for the reasons set forth in the opinion filed in November, 1885.

Petition dismissed, without prejudice.

The assignments of error specified the action of the court below: (1) In refusing to award to appellants the amounts respectively claimed by them, and in awarding the same to the heirs of Maria Young, deceased; (2) in finding that the compensation of physicians, who visited decedent at her special request for the purpose of ascertaining and passing upon her mental condition, and who were afterwards called upon to testify in the lunacy proceedings, are part of the costs in the lunacy proceeding, and cannot be recovered in the orphans' court upon a settlement of decedent's debts; (3) in refusing to find that the services performed by the appellants were necessaries for which her estate is liable; (4) in finding that the witness fees of appellants (as between the decedent and appellants) are costs in the lunacy proceedings, and cannot be recovered in the orphans' court; (5) in refusing to order payment of appellants' claims, after finding as a fact that the contracts to furnish the services rendered were entered into by the decedent without any fraud or imposition, and that the contracts had been fulfilled by appellants in good faith; (6) in finding that appellants' remedy was in the court of common pleas, and not in the orphans' court; (7) in dismissing appellants' exceptions, and in not sustaining them; and (8) in refusing to grant the prayer of appellants' petition for a review, and in not granting the same.

*J. Howard Morrison* and *Richard P. White,* for appellants.—
If the services furnished are to be classed as necessaries the
estate can be held liable. La Rue v. Gilkyson, 4 Pa. 375, 45
Am. Dec. 700.

The legal term "necessaries" is not restricted to the absolute
necessities of life, but embraces everything suitable to the con-
dition and general needs of the person who is supplied. Whar-
ton v. Mackenzie, 5 Q. B. 606; Rundel v. Keeler, 7 Watts, 238;
Robinson v. Bair, 2 Sad. Rep. 223; Parke v. Kleeber, 37 Pa.
251; Chapple v. Cooper, 13 Mees. & W. 252; Abell v. Warren,
4 Vt. 152; Tupper v. Cadwell, 12 Met. 562, 46 Am. Dec. 704.

The fees of attorneys employed, in some to prosecute and
others to defend actions at law or in equity, are necessaries for
which the persons contracting can be held liable. Thrall v.
Wright, 38 Vt. 494; Munson v. Washband, 31 Conn. 303, 83
Am. Dec. 151; Barker v. Hibbard, 54 N. H. 539, 20 Am. Rep.
160; Porter v. Briggs, 38 Iowa, 166, 18 Am. Rep. 27; Warner
v. Heiden, 28 Wis. 517, 9 Am. Rep. 515; Wilson v. Ford, L. R.
3 Exch. 66; Morris v. Palmer, 39 N. H. 123; Brown v. Ack-
royd, 34 Eng. L. & Eq. Rep. 214; Rogers's Appeal, 119 Pa. 178,
13 Atl. 72.

Where the lunatic has had the benefit of the services or prop-
erty of another, and there is nothing to show fraud or imposition,
and the parties cannot be placed *in statu quo,* neither he nor his
estate can escape from the liability to pay for such property or
services. La Rue v. Gilkyson, 4 Pa. 375, 45 Am. Dec. 700;
Beals v. See, 10 Pa. 56, 49 Am. Dec. 573; Lancaster County
Nat. Bank v. Moore, 78 Pa. 407, 21 Am. Rep. 24; Snyder v.
Laubach, 7 W. N. C. 464; Wernet's Appeal, 8 W. N. C. 39;
Kneedler's Appeal, 8 W. N. C. 97; Wirebach v. First Nat.
Bank, 97 Pa. 549, 39 Am. Rep. 821.

The right of appellants to have the account reviewed is given
by the act of assembly of October 13, 1840, par. 1, P. L. 1.

Where a bill of review brings itself within the provisions of
the act, the review is a matter of right. Riddle's Estate, 19 Pa.
431; Hartman's Appeal, 36 Pa. 70; Green's Appeal, 59 Pa.
235; Gillen's Appeal, 8 W. N. C. 499; Scott's Appeal, 112 Pa.
427, 5 Atl. 671.

*Arthur M. Burton,* for appellee.—If strangers be permitted
to contest proceedings in lunacy commenced by the heirs at law,

who have the most interest in the estate and in the lunatic, and, after subjecting the estate to great expense in proving the fact, seek to charge their own expenses upon the estate, when confessedly the party was a lunatic during all that time, as was proven in this case, such claims should not be allowed, except upon good cause shown for the interference. Beall v. Smith, L. R. 9 Ch. 85.

PER CURIAM:

We concur in the opinion of the court below, and in the decree dismissing the appellants' bill of review.

The decree is affirmed and the appeal dismissed, at the costs of appellants.